87 N.J. Super. 137 (1965)
208 A.2d 411
IN THE MATTER OF THE ALLEGED WILL OF SARKIS LATTOUF, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1965.
Decided March 18, 1965.
*139 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Marvin D. Perskie argued the cause for appellants and cross-respondents (Messrs. Perskie & Perskie, attorneys; Mr. John W. Gilbert, on the brief).
Mr. Joel A. Mott, Jr. argued the cause for respondents and cross-appellants.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
In this will case defendants (the contestants below) appeal from the whole of the final judgment *140 entered in the County Court, Probate Division, in favor of plaintiffs (the proponents), except for that portion which held invalid a bequest to decedent's attorney because of undue influence. They also appeal as inadequate the counsel fee awarded their attorney. Plaintiffs cross-appeal from so much of the judgment as invalidated the bequest to the attorney and from the counsel fees awarded respective counsel.
Sarkis Lattouf, an 80-year-old bachelor and resident of Wildwood, N.J., died of cancer on September 26, 1962, some two weeks after being admitted to a Baltimore, Md., hospital. Surviving him were three sisters and 41 nephews and nieces. After visiting Lattouf at the hospital on September 16, 1962, his attorney, a member of the New Jersey Bar, drafted the will, had it typed up leaving two spaces blank, and returned to the hospital on September 24 with his secretary to have it executed. The blank spaces were filled in by the attorney at the time of execution. These dealt, respectively, with the place of interment (paragraph Second), and specific bequests of $5,000 and an automobile to a niece, Marie Endres, and $5,000 to another niece, Joan Kummeth. Two hospital employees witnessed the will.
Paragraph Fifth of the will bequeathed to the attorney "the indebtedness of Five Thousand ($5,000.00) Dollars and interest which he owes me according to the terms of a promissory note held by me; and it is my will that at my death said indebtedness shall be cancelled * * *."
Paragraph Seventh created a trust of all the rest, residue and remainder of decedent's estate. The trustees were directed

"AS TO INCOME
To establish a fund, from which, in their absolute discretion, they may pay for or provide the reasonable necessities of life of any of my nephews or nieces or their or any of their issue in their several stations or situations in life; to pay for or provide for the higher education or specialized training in any craft or profession, of any of, or such of, my grand-nephews and nieces as may in my said Trustees absolute discretion, have need for such assistance and have displayed the capacity, ability and talent to utilize and benefit from such higher education or specialized training.

* * * * * * * *

*141 AS TO PRINCIPAL OR CORPUS
When the youngest child of my niece, Marie Endress shall have attained, or would have attained the age of twenty-five (25) years, then the trust hereby created shall end, and the principal thereof, together with all accumulated and undisbursed interest or income thereon and therefrom shall be equally disbursed and divided among my then living grandnephews and grandnieces. The expense of administering this trust shall be charged to and paid from the income so far as possible."
Decedent appointed the attorney and his secretary as executors, and named a Wildwood bank, a North Wildwood resident and the attorney as his three trustees.
The will was duly probated and letters testamentary issued by the surrogate to the attorney and his secretary on their verified complaint. One of decedent's nephews then moved to have the probate set aside, alleging undue influence, fraud upon the court, testator's physical and mental incapacity, failure of the will to comply with the controlling statutes, legal insufficiency in the will and the trust created thereby, and improper execution. An order to show cause issued, followed by extensive discovery proceedings on behalf of the contestants. After a plenary trial, the county judge filed a written opinion holding that the facts and circumstances created a presumption of undue influence with respect to the bequest in paragraph Fifth, which presumption had not been rebutted; that there was no substantial or reliable evidence to indicate that the undue influence exerted with respect to the bequest had any effect on the rest of the will, so that the remaining provisions were valid; and that the trust did not violate the rule against perpetuities. An accordant judgment was thereupon entered, allowing counsel fees of $3,000 to defendants' attorney, $1,000 to plaintiffs' attorney, and $500 to the attorney for Marie Endres and Joan Kummeth, the legatees. This appeal and cross appeal followed.
Our review of the record leads to the conclusion that the trial court correctly ruled that defendants-contestants did not discharge their burden of proving their claims of fraud upon the court, testator's physical and mental incapacity, *142 failure of the will to comply with the provisions of the Wills Act, or improper execution. We are also in accord with the determination that the facts and circumstances of this case created a presumption of undue influence on the part of the attorney with regard to the bequest made to him in paragraph Fifth, which presumption he did not successfully rebut  and this essentially for the reasons stated by the trial judge. The monies to be derived from payment of the debt referred to in that bequest will therefore fall into the residuary estate.
We agree with the reasoning and conclusion of the trial judge that the undue influence which defeated the paragraph Fifth bequest cannot legally be said to have any effect on or to invalidate the other testamentary provisions. Testator's obviously dominant intention was to benefit the natural objects of his bounty  the two nieces specifically mentioned in the bequests of paragraph Fourth; the nieces and nephews, and grandnephews and grandnieces referred to in the trust income provisions of paragraph Seventh, and the grandnephews and grandnieces referred to in the trust corpus provisions of that section. The undue influence of the attorney did not reach beyond paragraph Fifth, a provision we find to be entirely severable. Only that portion of the will need therefore be set aside. We see no reason why the doctrine of partial invalidity should not be applied in this case. See In re Bartels, 129 N.J. Eq. 280, 281 (E. & A. 1941).
This brings us to defendants' contention that the residuary trust violated the rule against perpetuities. The county judge held it did not, and in doing so fell into error.
The rule against perpetuities is in force in this State as a part of the common law. McGill v. Trust Co. of N.J., 94 N.J. Eq. 657, 664 (Ch. 1923), affirmed as modified, 96 N.J. Eq. 331 (E. & A. 1924). The rule requires that "all future interests, legal or equitable, in realty (except dower and curtesy and rights of entry for conditions broken) or personalty, which are contingent and indestructible, must be such as necessarily to vest, if at all, within the term measured by the life or lives of a person or persons in being at the time *143 of the creation of the interest and 21 years thereafter." Otherwise, they are invalid and void. Ibid.; Litcher v. Trust Co. of N.J., 11 N.J. 64, 79 (1952); Gray on Perpetuities (4th ed. 1942) 191; 6 N.J. Practice (Clapp, Wills and Administration) (3d ed. 1962), § 611, p. 130. To satisfy the requirements of the rule, a gift to a class must not only vest within the period prescribed by the rule, but the number of members of the class sharing in the gift and the size of each member's share must be fixed within that period. Thus, "if the maximum number of members who are to take may not be determined within the period of the rule, the gift to the class is void; or in other words, if the size of each member's share may be diminished by an increase in the membership of the class after the expiration of the period, the gift violates the rule." 6 N.J. Practice, above, § 614, p. 139; McGill v. Trust Co. of N.J., above, at page 665.
The trial judge held that testator had failed to designate expressly an event or time period at or within which the various interests created by the trust were to vest. Not so; vesting was to occur when the "youngest child of my niece, Marie Endres shall have attained, or would have attained the age of twenty-five (25) years." Not until then would the class of grandnephews and grandnieces close and their identity and number be determined. However, the trial judge considered this language ambiguous and proceeded to construe it as meaning the youngest child living at the time of testator's death, and not the last-born child of Marie Endres. We find no ambiguity in the language employed.
We must look at the corpus provision of paragraph Seventh as of the date of testator's death. Would the trust corpus vest within a life in being plus 21 years? The answer is clearly no.
Marie Endres had sometime prior to the execution of the will undergone a complete hysterectomy. The parties by stipulation agreed that she was incapable of bearing children when the will was executed and the testator died. The record *144 reveals that testator knew of the hysterectomy when he executed his will.
Defendants-contestants rely upon the ancient legal presumption, often mentioned in our cases, that a woman is presumed legally capable of bearing children at any age. Oleson v. Somogyi, 93 N.J. Eq. 506 (E. & A. 1921); 2 Blackstone's Commentaries 125. If one were to follow through on contestants' argument that Marie Endres could still have children, there exists the possibility that she might die and leave a child under four years of age. Since the vesting of the trust corpus among the "then living grandnephews and grandnieces" is to take place when that child "shall have attained, or would have attained" the age of 25, this possibility would violate the requirement of vesting within the period of the rule.
However, we are unwilling to follow the contestants in their reliance upon the ancient presumption. As was said in Trenton Banking Co. v. Hawley, 7 N.J. Super. 301, 307-8 (Ch. Div. 1950), the presumption should not, merely because of its antiquity, blind us to present realities and conceal demonstrable truth. And see Sevel v. Swarzman, 33 N.J. Super. 198, 203 (Ch. Div. 1954). The hysterectomy, involving complete removal of Marie Endres' procreative organs, rendered her permanently sterile. It logically follows that she could bear no children other than the only child she had when testator died. That child, Linda, it has been stipulated, was just short of three years and ten months old when Lattouf expired.
The rule would be violated were we to take Linda as the measuring life. The trial judge did so, but assumed she was 4 1/2 years old when testator died. This was error. Linda was born December 1, 1958; Lattouf died September 26, 1962, so that the child, as noted, was at least two months short of age 4. Accordingly, had she died immediately after the execution of the will and Lattouf's death, more than 21 years would expire before she "would have attained" age 25.
*145 So, too, were we to take Marie Endres as the measuring life. Had she died immediately after Lattouf, the trust would not have vested within her life and 21 years thereafter.
As our cases have uniformly held, a future interest must vest, if at all, within a period measured by a life in being when the interest was created, plus 21 years. The nine-month period tacked on in case of an existing pregnancy (6 N.J. Practice, above, § 611, p. 130, citing Randolph v. Randolph, 40 N.J. Eq. 73 (Ch. 1885), and Hewitt v. Green, 77 N.J. Eq. 345 (Ch. 1910); Simes, Future Interests, 373 (1951)) has no application in the circumstances of this case. Marie Endres was not pregnant. She could not be, nor, of course, could the infant Linda. Although plaintiffs' counsel claimed at oral argument that consideration should be given to this extra term of gestation, he has now abandoned the argument, and necessarily so.
Accordingly, we conclude that the trust failed because it was in violation of the rule.
We deal now with the question of counsel fees at the trial level. Counsel for plaintiffs-executors had expended almost as much effort and time as counsel for defendants-contestants. The latter, of course, had the laboring oar, and achieved only a partial success in the County Court where, as we have concluded, he should have been successful in striking down the trust. Although we give due consideration to the trial court's exercise of discretion in the matter of fees, we deem the award of only $1,000 to plaintiffs' attorney as insufficient. A counsel fee of $2,500 will be allowed. The fee for defendants' attorney should be increased to $3,500. These sums have been fixed by us in light of our study of the record and the respective affidavits of services rendered.
As for allowances on this appeal, we have considered the affidavits of services and disbursements submitted by the two attorneys and will allow each attorney a counsel fee of $1,500, plus their actual disbursements.
For the factors to be considered in awarding counsel fees, see In re Bloomer, 37 N.J. Super. 85, 94 (App. Div. 1955).
*146 The matter is remanded to the County Court, Probate Division, for the entry of a judgment in accordance with this decision, to include the revised fees for services rendered in that court. Our remand will provide for the $1,500 fee and disbursements allowed each counsel on this appeal.