In the matter of the application of GRACE R. RIVA for leave to convey, mortgage or lease real property.

[Decided May 6th, 1914.]

1. Where it appeared at a hearing upon an application by a married woman for permission to sell her property under *P. L. 1889 p. 43* (*3 Comp. Stat. 1910 p. 3230*), authorizing the court of chancery to permit such sale where the wife is living separate from her husband and he neglects or refuses to support her, that the husband was willing to support the wife if she would return to him, and that there were children of the marriage, so that the husband would be entitled to curtesy if he survived the wife, the chancellor, in the exercise of the discretion granted

him under the statute, will refuse to grant the permission in view of the questions raised thereby, whether the sale by the wife would cut off the husband's right of curtesy, and whether the order of the chancellor in the special proceedings would be *res judicata* in subsequent action by the husband or the heirs, which questions would materially affect the marketability of the title and prevent its sale for a fair value.

2. At common law the husband was entitled to the possession of his wife's realty during their joint lives, with remainder to the husband for life if he survived the wife, and there was a child of the marriage, and a further remainder to the heirs of the wife in fee-simple.

On petition for leave to convey land.

*Mr. Kinsley Twining,* for the petitioner.

*Mr. George S. Silzer,* for the respondent.

HOWELL, V. C.

This is a proceeding instituted by a married woman praying that she may have leave to convey, mortgage or lease her real property under the authority of chapter 28, laws of 1889. *Comp. Stat. p. 3230.* She was married to her present husband on April 26th, 1893, and immediately thereafter made her home with her husband at Milltown, in Middlesex county. They lived there together until 1908, when they moved to New Brunswick, and there lived in a house belonging to the petitioner. The petitioner left her husband on May 17th, 1912, and went to Spring Lake, where she resided until some time in 1913; she then went to New York City, where she now lives. The two children of the marriage, both girls, have remained with her.

The respondent is a physician; he was practicing his profession in New Brunswick at the time the petitioner left him, and had his office in the basement of the house in which they lived. Since she left him he has returned to Milltown and is now practicing there; and the petitioner soon after the separation sold the house in New Brunswick in which they had lived. In 1911, the petitioner became entitled to a substantial share in a large fortune under the wills of her father and mother, so that it was not necessary for her to rely upon her husband for the support of herself and the children.

She now applies to the court for an order that she may sell, convey, mortgage or lease any interest, estate or right that she may have in certain of her New Jersey real property particularly described in the petition in the same manner and with like effect as if she were sole and unmarried; she alleges that the property came to her from her mother, and not from her husband; that she was living in a state of separation from him, and that he "neglects and refuses to maintain and support your petitioner." On the filing of the petition an order was made requiring the husband to appear and show cause why its prayer should not be granted. On an adjourned day the husband appeared and proofs were adduced orally before the court, the only witnesses being the petitioner and the respondent. The defence or objection to the relief sought, which was interposed by the respondent, was that he did not neglect and refuse to maintain and support the petitioner. It was admitted that the property in question came to the petitioner from her mother, and that she and the respondent were living in a state of separation, leaving open only the question of his neglect and refusal to maintain and support her.

The statute in question was before Vice-Chancellor Stevenson in a similar application (*In re Staheli, 78 N. J. Eq. 74*), in which he advised a decree on the ground that the husband neglected and refused to support the wife while they were separated from each other, holding that it made no difference whose fault brought about the separation, and that a decree should be made in view of the husband's refusal and neglect to support the wife. The situation here is somewhat different. While the wife separated herself from her husband (for whose fault it makes no difference), and while the husband is not actually furnishing support and maintenance to the wife, yet he alleges that he is willing to support her to the best of his ability, provided she will return to his home and live with him. These facts raise the question whether it is contemplated by the statute that a married woman may abandon her home and claim relief under this statute upon the ground of non-support in a case where the husband is willing to support her.

It is provided by the Married Woman's act of 1874 (*Comp. Stat. 3237 § 14*) that nothing contained in the act should en-

able a married woman to convey or encumber her lands without her husband joining as heretofore, except in those instances for which express provision was made in that act, and that no conveyance, deed, contract or act of such married woman, or any judgment or decree against her should in any respect impair or affect the right of the husband in her land as tenant by the curtesy after her death. The act under which this proceeding is taken was passed in 1878, and was amended to its present form in 1889. The parties to this controversy were married in 1893, after both of these acts had gone into operation.

Has the husband a tenancy by curtesy initiate, and if such right exists may a married woman sell her land free from the right of the husband, or must it be subject to his right? This is another of the questions in the case. While it is not raised by the petition or by the defence at the hearing, it does appear upon consideration of the merits of the case, and if there is a substantial doubt about what interest the wife has the right to convey under this statute of 1889, or if the court should be of opinion that the husband has a right in the premises, it should hesitate before making a decree which might have the effect of casting doubt upon the title. Not only would this affect the marketability of the title in the near and in the distant future, but it would likewise seriously affect the present market value of the land for purposes of sale or exchange.

The act of 1889 appears to have been passed for the benefit of a married woman who, first, owns real property in this state, and second, is living in a state of separation from her husband, and third, whose husband neglects and refuses to maintain and support her. It gives her authority to apply by petition to this court seeking a decree that during the separation, neglect and refusal to support her she may sell, convey, mortgage or lease any interest, estate or right that she may have in such real property. The act then provides for notice of application to the husband, and finally empowers the court, upon satisfactory proof that the wife is living separate and apart from her husband, and that he neglects and refuses to support and maintain her, to authorize her to sell, convey, mortgage and lease any interest, estate or right that she may have in such real property, except

such as came to her by gift through or from her husband in the same manner and with the like effect as if she were sole and unmarried. The act then provides that any sale, conveyance, mortgage or lease by her of any interest, estate or right which she may have in such real property made in pursuance of such decree shall pass any and all such interest, estate or right as she might have in such real property except such as came to her from her husband in the same manner and with the like effect as if she were sole and unmarried.

The act permits the court, but does not require it, to make an order under certain circumstances that she may sell, convey, mortgage and lease any interest, estate or right that she may have in such real property, using words which are entirely consonant with the idea of conveying an interest less than a fee, or an interest which would consist of a fee subject to an encumbrance.

The question then arises whether the act of 1889 repeals to any extent whatever the provisions of the section of the Married Woman's act of 1874 above quoted. It certainly does not do so in terms. If it can be held to operate as a repealer it must be by implication only. The two acts deal with the same legal situation and are therefore *in pari materia*, and unless there is either an express or implied repealer they must stand together as component parts of our system of jurisprudence. *Walker* v. *Freeholders, 82 N. J. Law 348; affirmed, 83 N. J. Law 695; Freeholders* v. *Essex County Park Commission, 62 N. J. Law 376.* They seem to me to occupy this position, and if they do, then the utmost that this court could do in authorizing a sale by the married woman would be to authorize the sale of her interest, estate or right, subject to the interest, estate or right of her husband.

Now, what is the extent of the right of the husband in this property, the title to which stands in the name of the wife? From the case of *Doremus* v. *Paterson, 69 N. J. Eq. 194,* and the case of *Leach* v. *Leach, 69 N. J. Eq. 620,* I deduce the rule to be as follows: At common law, upon a marriage, the husband became entitled to the possession of the wife's realty during their joint lives, with remainder to the husband for his life if he sur-

vived her, and there was a child of the marriage, with a further remainder to the heirs of the wife in fee-simple. These cases hold that the only effect of our Married Woman's act of 1874 upon this situation is to abolish the right of the husband to the possession of the wife's lands during their joint lives, and that it does not abolish the estate of tenancy by the curtesy initiate. Applying this rule to the case in hand we find—*first,* an estate for life in the wife during the joint lives of the husband and wife; *second,* an estate for life in the husband if he survives the wife, and there is a child of the marriage; *third,* with remainder in fee to the heirs-at-law of the wife. There appears to be a substantial estate in the husband, the existence of which casts such a cloud upon the estate of the wife as to make it extremely undesirable to make sale of the land because of the largely reduced price that would be offered for her interest under the circumstances. This marks a wide difference from the *Staheli Case.* The report shows that there were no children in that case, nor any likelihood of any; hence, the husband had not and could not get any interest in the wife's lands.

Another reason why the court should hesitate about making the order lies in the fact that the proceeding is anomalous and is not in accordance with the regular rules of equity procedure. It is true that notice of the application of the wife must be given to the husband, but there is no requirement that he shall answer and thus make an issue to be tried, nor is there any method of trial prescribed. The case of *Staheli, 78 N. J. Eq. 74,* was heard on affidavits and depositions. If a decree should be made according to this practice, what would be its status in an action of ejectment instituted by the husband years hence, after the death of the wife had made him a claimant for the curtesy? Would it be *res judicata,* or would all the questions be open for reinvestigation and resettlement? Certainly the question as to whether the husband had acquired an estate by the curtesy consummate would be an open one. Or suppose that years hence the heir-at-law of the wife should bring ejectment against the holder of the legal title upon the ground that there had been no conveyance because the husband's consent thereto had not been obtained, would the fact that the conveyance had originally received the

sanction of this court be any defence in case the common law courts should hold that the act in question did not repeal the section of the Married Woman's act of 1874 above referred to? I think not, and I am constrained therefore to the conclusion that the thing which the wife now wants done would be dangerous to all concerned. The act by its terms submits the whole question to the sound judicial discretion of the court. The married woman gets no absolute right to a decree. The court within its limits of discretion may make the decree or not, as such discretion dictates.

I am of the opinion that the relief should be denied and the petition dismissed, and I will so advise.