EUGENE STEVENSON, EDMUND B. LEAMING, VIVIAN M. LEWIS,
JOHN H. BACKES, JOHN GRIFFIN, JOHN E. FOSTER,
MALCOLM G. BUCHANAN AND JAMES F.
FIELDER, VICE-CHANCELLORS.

JOHN RILEY and MARY ANN RILEY, his wife,

*v.*

WILLIAM RILEY and KATIE RILEY, his wife.

[Decided March 31st, 1921.]

1. Where an executor is also devisee, a judgment recovered against him as executor upon a claim against his decedent's estate is not a lien either upon the estate of the decedent or that which came to him indi-

vidually dissociated from his office of executor; but the debts of the ancestor remain a lien thereon for one, year after his death and until a *bona fide* sale by the devisee after the expiration of such year. Such a judgment is, however, payable through certain statutory proceedings.

2. After sale in partition a creditor may come into court and have his debt paid out of the proceeds of sale, provided his claim was enforceable against the land.

3. The proceeds of the sale of land retain the character of real estate for the purposes of succession and distribution.

4. While a husband, whose wife has not borne him a child alive, has neither an estate by the curtesy initiate nor an inchoate right of curtesy in her land, he has, nevertheless, a contingent estate in remainder, because, upon the happening of the contingency of issue born alive, he would have an inchoate right of curtesy, and upon surviving his wife, he would be entitled to an estate by the curtesy consummate—that is, a freehold estate in possession for the remainder of his life.

5. A husband's right to possible succession to his wife's interest in a fund raised by the involuntary sale of her estate in lands by process of law, is not to be defeated by payment of the fund to her, but the fund will be conserved and protected so as to be available to meet the husband's ultimate estate by the curtesy therein if it become consummate.

6. W. R. is forty-seven and K. R., his wife, is forty years old; they have never had issue, and have lived separate and apart for several years. —*Held*, there is no presumption that she will not bear him a child alive, which event would create in him a vested remainder or inchoate right of curtesy, and, upon his surviving her, an estate by the curtesy consummate.

7. There is no period in the life of a woman when it is presumed in law that she may not possibly bear children, no matter how old she may be.

On application for money in court.

*Mr. Richard Fitzherbert,* for the applicant, Katie Riley.

*Mr. James H. Bolitho,* for William Riley, *contra.*

WALKER, CHANCELLOR.

This is a partition suit. The complainants are John Riley and Mary Ann, his wife, and the defendants are William Riley and Katie, his wife. The present proceeding is an application at the foot of the decree for a portion of the proceeds of the sale of the lands which were sought to be partitioned. The pertinent facts are these: James Riley, father of the complainant John Riley,

and of the defendant William Riley, departed this life May 22d, 1893, intestate, seized in fee of a tract of land in the borough of Wharton, and also of an equal undivided one-half part of a tract of land in the township of Randolph, both in the county of Morris. He left him surviving his widow, Ann Riley, and his two sons, John and William. The widow died March 29th, 1916, testate, seized of the other equal undivided half part of the Randolph tract, and in and by her last will and testament, which was duly proved, she devised the same to her son William Riley. The bill for partition was filed January 10th, 1918, and at that time the seizin of the brothers was as follows: John, one-half of the Wharton tract and one-quarter of the Randolph tract, subject to the inchoate right of dower of his wife, Mary Ann; and William, one-half of the Wharton tract and three-fourths of the Randolph tract, subject to the inchoate right of dower of his wife, Katie.

On February 2d, 1917, judgment was recovered by the executors of Robert F. Orams, deceased, against William Riley, in a small cause court and docketed in the Morris county clerk's office for $26.66 damages and costs. Another judgment was obtained on the same day by the executors of Robert F. Orams, deceased, against William Riley as executor of Ann Riley, deceased, in a small cause court and docketed in the Morris county clerk's office for $46.08 damages and costs. Both of these judgments were assigned by the executors of Orams to Katie Riley before the filing of the bill. Pending this suit executions were issued on both judgments and sale was made by the sheriff of Morris county under those writs, at which sales Katie Riley became the purchaser and was given deeds. Under the execution against William Riley, executor, the sheriff sold to Katie the right, title and interest which was of the said Ann Riley, deceased, at the time of her death, in the tract of which she died seized—the Randolph tract; and under the execution on the judgment against William Riley, individually, he sold to her the right, title and interest of her husband in the other tract of which partition was sought—the Wharton tract.

The deed for the Randolph tract passed no title for reasons hereinafter stated. Katie Riley secured a good title to the undivided share and interest of William Riley in the Wharton tract,

by virtue of the sheriff's sale thereof and deed therefor, and is the owner of the net proceeds of that share arising from the sale, amounting to $1,326.63, which has been paid into court. Her husband claims an interest in this share.

On April 29th, 1920, Katie Riley filed a petition in this cause claiming ownership in fee in the equal undivided one-half of the Wharton tract, by virtue of the proceedings above recited; and also like ownership in the equal undivided three-fourths of the Randolph tract, by virtue of the same proceedings, setting up that the right, title and interest which was of her husband in the Wharton tract passed to her, and that the right, title and interest which was of her mother-in-law, Ann Riley, deceased, has passed to her. William Riley, the husband, filed an answer to the petition, in which he averred that he furnished the consideration for the purchase of the judgments mentioned to protect his interest in the premises, and that it was understood that the purchase was to be made for the benefit of both himself and his wife. An order was made on the petition requiring William Riley to show cause why the selling master should not be directed to pay the proceeds of sale of the share of William Riley to the petitioner, Katie Riley. On the hearing of the order to show cause, on May 24th, 1920, it was ordered that the selling master pay into this court the share of the proceeds arising from the sale which was of the defendant William Riley, to abide the further order of this court; with leave to Katie Riley to apply for disposition of the money so paid. The present application is in pursuance not only of that leave but also of the leave given in the decree for sale, which likewise ordered payment into court.

Depositions or other evidence have not been taken on the order to show cause, but on the argument it was conceded that the facts of record adverted to above are true.

*As to the Randolph tract:*—The sheriff's deed passed no title to Katie, because the judgment against the representative of a decedent's estate only adjudicates the liability of the estate and ascertains and fixes the amount of the claim, but does not make it a lien upon the lands of the deceased debtor. But the claim on which this judgment is founded is payable out of the pro-

ceeds of sale of the Randolph tract, for reasons hereafter to be stated.

The decree directed the sale of both tracts, including the inchoate right of dower of the complainant Mary Ann Riley in the undivided share of her husband, John Riley, and also the inchoate right of dower of the defendant Katie Riley in the undivided share of her husband, William Riley; and directed the selling master to bring into court the portion of the moneys arising from the share of the defendant William Riley, which was subject to the lien of the judgment recovered against him individually by Orams' executors, to the end that the same might be disposed of as the chancellor should direct, but did not direct, that the sale be made free from the lien of that judgment. This direction for bringing in the money and its proper disposition may be treated as in effect a direction to sell free from the encumbrance of that judgment and as an exoneration of the land from the lien thereof. There is no mention of the judgment against William Riley, executor, in the decree; but leave was given at the foot thereof for the parties, or either of them, to be at liberty to apply to the court for further directions if occasion should require.

The judgment against William Riley, executor, was for his mother's debt, and ascertained it and fixed the amount. The right Katie has in the proceeds of the sale of the Randolph tract by virtue of the debt ascertained in this judgment has been put in suit here by petition; and, therefore, the amount of the judgment against William Riley, executor, while not a lien upon the land of which his mother died seized, and which by her will was devised to him, is, nevertheless, to be paid out of the proceeds of the sale of that tract, for reasons hereinafter stated, notwithstanding that where an executor is also a devisee a judgment recovered against him as executor upon a claim against his decedent's estate is not a lien either upon the estate of the decedent or that which came to devisee, dissociated from his office of executor. *Mott* v. *German Hospital, 55 N. J. Eq. 722.* Such a judgment is, however, payable through certain statutory proceedings, which need not here be mentioned.

So long as the title to lands descended remains in the heirs or devisees the debts of the ancestor constitute a lien thereon. *Haston* v. *Caslner, 31 N. J. Eq. 697, 699.* Notwithstanding, the statute provides that the lands of the ancestor shall remain liable for the payment of his debts for one year after his decease, yet it has been held that until a *bona fide* sale has been made by the heirs or devisees, the lien continues and is so recognized in the seventy-seventh section of the same act. *Ibid. 699; Morgan* v. *Morgan, 71 N. J. Eq. 606, 608.*

In *Latimer* v. *Hanson, 1 Bland 51,* after a sale under a bill for partition, a creditor was permitted to come in by petition and have his debt paid out of the proceeds of sale. And that case was approvingly cited by Chancellor Green in *Speer* v. *Speer, 14 N. J. Eq. 240* (at *p. 251*). That is the established practice of this court and has been comprehended in the chancery rules since 1870. See rules *Nos. 221 et seq. (compilation of 1917).* Of course, the creditor would have to have a right to enforce his claim against the land. See *First National Bank* v. *Thompson, 61 N. J. Eq. 188, 202.* Therefore, the debt of the testator, Ann Riley, which is embodied in the judgment recovered against her executor, will be paid out of the proceeds of her devisee's interest in the Randolph tract.

*As to the Wharton tract.*—This concerns the claim of William Riley to the proceeds of the sale of the interest in the lands which were his and which passed to his wife by virtue of the judgment against him individually, which was assigned to her and on which an execution was issued, under which his right, title and interest was sold and conveyed to her by the sheriff before the sale in partition, and who was therefore at the time of the latter sale the owner of the fee in what had been his undivided estate in the lands.

The proceeds of the sale of land retain the character of real estate for the purposes of succession and distribution. *Hackensack Trust Co.* v. *Tracey, 86 N. J. Eq. 301, 307.* In that case I held that while a husband, whose wife has not borne him a child alive, has neither an estate by the curtesy initiate nor an inchoate right of curtesy in his wife's land, he has, nevertheless, a contingent estate in remainder in that land; because, upon the happen-

ing of the contingency of issue born alive he would have an inchoate right of curtesy, and upon surviving his wife, he would be entitled to an estate by the curtesy consummate—that is, a freehold estate in possession for the remainder of his life; and I made the *quære,* Can a wife who has not borne her husband a child defeat his possible right to inchoate curtesy, and, ultimately, consummate curtesy, by reason of the involuntary sale of her land under process, producing surplus money, which money retains its character as land for the purpose of succession? As I remarked (at *p. 307*), I am just as unable to understand why the husband of a woman who has not borne him a child has not a *contingent estate in remainder* in her lands as Vice-Chancellor Stevens was unable to understand why a husband, after issue born alive, has not a *vested estate in remainder in* his wife's land, and, for the reasons given in that opinion, I hold that William Riley's right to possible succession to her interest in this fund for his life if she predeceases him, provided they have a child born alive, is not to be defeated by the sale in partition, and, therefore, the fund will have to be conserved and protected so as to be available to meet the husband's ultimate estate by the curtesy therein, if it ever becomes consummate.

She could not convey her land so as to defeat this right without his joining her in the conveyance, and, equally, an involuntary conveyance of her land by process of law should not operate to defeat it.

It was stated on the argument and is uncontradicted that William and his wife, Katie, have lived separate and apart for several years; that no child has been born of their marriage; that Katie is past forty years of age and her husband is about forty-seven years old; and it is argued that the probability of issue is remote even if they should live together again, and that therefore the husband can have no appreciable interest in the fund belonging to his wife. This is *non sequitur.*

There is no time in the life of a woman, no matter what her age, when she is presumed in law to be unable to conceive and bear children. Sir William Blackstone says that a possibility of issue is always supposed to exist unless extinguished by the death of the parties, even though they be each of them a hundred years

old. *2 Bl. Com. 125.* See also *1 Wash. R. P.* § *202; 2 Pres. Est. 395.*

Vice-Chancellor Stevenson (*In re Staheli, 78 N. J. Eq. 74*) said (at *p. 77*) that in that case there had been no issue of the marriage and that it was apparent that there would be none. The facts upon which that inference was based are not disclosed. And Vice-Chancellor Howell (*In re Riva, 83 N. J. Eq. 200,* at *p. 205*), speaking of *In re Staheli,* said that the report in that case showed that there were no children, nor any likelihood of any, hence the husband had not and could not get any interest in the wife's lands. So far as these observations run counter to the ancient and established principle of law just adverted to, namely, that there is no period in the life of a woman when it is presumed that she may not possibly bear children, they must be overruled.

It is also urged on behalf of Katie Riley that she has an inchoate right of dower in the share and interest of her husband in the Randolph tract, and is therefore entitled to have her dower interest protected in the proceeds of the sale of that tract. That is so, as the premises were sold free from her inchoate dower.

*As to both tracts.*—There was paid into court as the net proceeds of the three-fourths interest in the Randolph tract, which was owned by William Riley, the sum of $994.97. Out of this, one-third must be set apart and invested to secure Katie Riley's ultimate estate in dower in case she shall survive her husband, the interest to be paid to him during their joint lives. *Partition act, Comp. Stat. p. 3909* § *39.* Out of the balance there must be paid the claim fixed by the judgment recovered by the executors of Orams against the executor of Ann Riley, amounting to $46.08, with interest thereon. The balance will be paid to William Riley, the devisee of Ann Riley, and owner of the share. There was paid into court as the net proceeds of the one-half interest in the Wharton tract, which had been owned by William Riley, but was owned by Katie Riley at the time of sale, the sum of $1,326.62. This entire sum must be set apart and invested to secure his ultimate estate by the curtesy, if that shall become consummate by the birth of issue to William Riley and Katie, his wife, and her death in his lifetime, the interest to be paid to her during their joint lives.