This is a partition suit in which the lands involved have been sold under a decree for sale, which adjudged that the complainant, Mary H. Mullen, was seized of and entitled to one equal undivided half of the lands, subject to the interest therein of her husband, Thomas J. Mullen, by the curtesy initiate. She now petitions for an order directing payment to her of her share of the proceeds of sale, and that the right, if any, of her husband therein, be settled and determined.
The parties were married in 1895 and have had issue. They have not lived together since March, 1920, and since that date the husband has not supported his wife. He opposes her application; states his willingness to support her if she will live with him; declines to accept a sum in gross in lieu of curtesy, and insists that the whole proceeds of sale shall be held in court until the time arrives for its ultimate disposal. They disagree as to which of the pair is at fault for separation, and, for the purpose of this decision, I do not consider it necessary to determine which spouse deserted the other, nor what bearing the husband's offer of support has on this application. The lands in question were devised to the wife by her father in fee-simple, as a tenant in common.
The wife bases her claim to the whole of her share of the proceeds of sale on the Married Woman's act (Comp. Stat.p. 3225), and particularly on P.L. 1880 p. 82, approved March 3d 1880. Comp. Stat. 3225 § 8-o. The act of 1880 provides that any married woman living in a state of separation from her husband, and who is entitled to any interest in real estate, excepting an estate that may have come to her from her husband, may, without the consent or concurrence of her husband, receipt for, convey, sell or devise any interest, estate or right she may have in any real property, the same as though she were a femesole.
It might be remarked that the complainant-petitioner did not assert the right to sell her interest or estate in the lands under this act, but chose to file a bill for partition, in which proceedings the lands were sold because they could not actually be partitioned. Had the partition been made, her *Page 92 
husband's interest or estate would have attached to the portion of the lands set-off to her.
The proceeds of the sale retain the character of real estate for the purpose of distribution (Geldhauser v. Schulz,116 Atl. Rep. 791), and, assuming that the act of 1880 applies to the situation which the petitioner has created by filing her bill for partition, it becomes necessary to ascertain what interest her husband had in the lands, and, if he had any, whether the wife could have conveyed the lands free from such interest by virtue of the provisions of that act. In this connection, we must refer to the Married Woman's act of 1874. Comp. Stat. p. 3225.
Under that act the real property owned by a married woman, and the income therefrom, became her sole and separate property as if she were a single woman, but section 14 of that act provides that nothing in the act contained shall enable any married woman to convey her real property without her husband joining in her conveyance, (except in certain instances provided for in the act), and that no conveyance by any married woman shall impair or affect the right of the husband in her lands as tenant by the curtesy after her death. The Married Woman's act therefore abolished the right which the husband had at common law to the possession of his wife's lands during their joint lives, but left him the right to possession for his life in case he survives her and there is issue born of the marriage. Hackensack Trust Co.
v. Tracy, 86 N.J. Eq. 301; Bucci v. Popovich, 93 N.J. Eq. 121;affirmed, 93 N.J. Eq. 511. She cannot deprive him of this right by her own conveyance, nor can he be divested by an involuntary sale of her lands under judicial proceedings. Riley v. Riley,92 N.J. Eq. 466; Bucci v. Popovich, supra.
By a proper act the legislature may abolish curtesy, and, in legislating for the purpose described in the act of 1880, the legislature could have provided that in a situation covered by the act a husband, whose marriage was solemnized after the passage of that act, should have no curtesy in the lands of which his wife is seized of an estate of inheritance. Is it the intention of the act to so provide? The act is entitled *Page 93 
"An act for the better securing of the property of married women living in a state of separation from their husbands." If one of its purposes is to abolish curtesy in a situation therein described, its constitutionality is in question, because it embraces more than one object, and one of the objects, namely, the intention to abolish curtesy, is not expressed in its title. Reese v. Stires, 87 N.J. Eq. 32.
But passing that question and taking up the question whether the intent and effect of the act of 1880 is to repeal section 14 of the Married Woman's act, and to authorize a married woman, under conditions described in the act, to sell and convey her lands free from her husband's right of curtesy. The act of 1880 contains no express repealer, and I can find none implied by its terms. The act deals only with the wife's interest in lands, and authorizes her to receipt for, convey and sell only "any interest, estate or right she may have" therein, thus negativing the idea that the purpose of the act is also to deal with the husband's estate or interest and to deprive him thereof through a conveyance by the wife. In the absence of such a law as this, a married woman cannot make a valid conveyance of any interest or estate she may have in lands, unless her husband joins in the conveyance, and it seems to me that the purpose of this act is to authorize her, under conditions mentioned therein, to make a valid conveyance of her interest in lands without her husband's consent, but not thereby to cut off his estate by the curtesy when she sells and conveys an estate of inheritance. In re Riva,83 N.J. Eq. 200. Leaving out of consideration the effect which a separation brought about by her fault and the williness of her husband to live with and support her, might have in construing the act, I would say that, whether her interest or estate in lands be an estate of inheritance or less, she may sell and convey under this act without her husband's consent, and receive the full consideration which a purchaser is willing to pay for the interest or estate conveyed, but if her estate be an estate of inheritance, her sale and conveyance must be subject to her husband's right to possession for his life, in case he survives her and *Page 94 
issue has been born of the marriage. I conclude that, under the act in question, the petitioner could not have sold and conveyed her land free from her husband's interest, and that the sale under partition in this cause will not operate to defeat his right, but that such right attaches to the proceeds of sale.Riley v. Riley, supra.
The petitioner claims — first, the right to have the money in court paid to her in full and to dispose of it as she pleases, without regard to her husband's interest therein, and, if she shall dispose of it, that her husband's interest is gone; or, second, that the money be paid to her, less such sum as will represent the gross value of his curtesy if she were now deceased and he were entitled to his curtesy at once, such sum to remain in court until the death of one of them, in the meantime she to receive the income therefrom; if she survives him, the principal to be paid to her, but if he survives her, he to receive the then gross value of his curtesy, or the income for life on the sum in court, and upon his acceptance of a sum in gross, or upon his death, the balance remaining to be paid to her heirs.
I know of no statute which, under the circumstances here present, authorizes the court to order payment to the wife of the whole sum in court, or to ascertain the value of her interest in the fund and to order the same paid to her, or to ascertain the value of the husband's contingent interest and to order either that such gross value be paid to him or be held to await the contingency of the prior death of the wife. Section 52 of the Partition act (Comp. Stat. p. 3912) provides that estates by the curtesy and dower may be sold by decree of the court and a certain sum ordered paid in satisfaction thereof, or that a share of the proceeds of sale be invested for the benefit of the person entitled to such estate, as provided by the rules and practice of this court. This section, however, applies to cases where curtesy has become consummate by the death of the wife and under the rules and practice of this court, a sum in gross for curtesy consummate can be fixed only when the husband files a written consent to accept a gross sum. But counsel for the wife contends that, because *Page 95 
of the provisions of the act of 1880 and in the absence of any other statute, this court has power to order that a gross sum be now paid to the wife, and he cites, in support of this contention, Leach v. Leach, reported in 69 N.J. Eq. 620,
and 72 N.J. Eq. 571. That case was a foreclosure suit in which title to the lands was in the wife, who applied for payment to her of a sum in gross out of the surplus moneys. The learned vice-chancellor held that the refusal of the husband to consent to such payment was no bar to granting her application, and he based his conclusion that she was entitled to such gross sum on section 60 of the Chancery act (Comp. Stat. p. 433) which provides that, when money is paid into court in foreclosure proceedings, the owner of an estate for life may have payment of a gross sum in lieu thereof. It will be noted that in Leach v.Leach the application was made under a statute which applies only to surplus money arising in foreclosure suits. In Ross v.Adams, 28 N.J. Law 161, where the purchase price of lands taken in eminent domain proceedings was paid into court, the supreme court, in the absence of any statute, directed payment of a sum in gross for the value of a wife's interest in the lands taken, a sum in gross for her husband's contingent right of curtesy, and directed that the balance of the fund be invested for the benefit of the children of the marriage. This case was reversed by the court of errors and appeals on the ground that the interests in the fund had not been properly declared by the supreme court, the husband not being entitled to any part thereof, and the judgment reversing directed that the fund be invested for the benefit of the wife for life and after her death for the benefit of the children, and at their death to be paid to another party to the cause, or to her heirs. Although the learned vice-chancellor inLeach v. Leach, supra, apparently relied upon section 60 of the Chancery act when he adjudged that a sum in gross could be paid to the wife from the surplus money in foreclosure, he expressed the opinion that the decision of the court of errors and appeals in Ross v. Adams cannot be considered as an adjudication overruling the opinion of the supreme court as to the power *Page 96 
of the court to direct payment of gross sums out of a fund in court without statutory authority or the consent of the parties in interest. Nevertheless, I prefer to accept the decision of the court of errors and appeals, when applied to the circumstances of the instant case, as indicating that this court has no power to order a gross sum paid to the wife out of the fund in court, in lieu of her estate for life. Had title to the lands here in question remained in the wife, or had she sold and conveyed her interest or estate under the act of 1880, the lien (if I may so call it) of her husband for his curtesy would have remained on the lands, and, in case he survives his wife, he would be entitled to receive all the net rent and profits of the lands for his life. The lands having been sold under judicial proceedings, his lien follows and attaches to the proceeds of sale, and he will be entitled to the same interest in the proceeds as he had in the lands, and that interest, in case he survives his wife, is the net income of the whole fund. The wife insists that the intention of the Married Woman's act is to free the married woman from the hardships under the common law, which subjected her real estate so largely to her husband's control, and to give her the sole use and enjoyment of her separate estate, and that such legislation should be liberally construed in her favor, so that all the benefits intended shall inure to her (Bucci v.Popovich, supra), and she further insists that since she was entitled to the possession of the real estate and the rents and profits therefrom, free from the control of her husband, she should now be put in possession of the proceeds of the sale of the real estate, or of a substantial portion thereof. But the Married Woman's act should not be so liberally construed as to give her husband's estate as well as her own. To put her in possession of the fund might defeat the husband's curtesy, because she may dissipate it. In fact, she claims the right to dispose of it after it comes into her possession, and that, if she does, her husband's interest is gone. To direct payment of a gross sum to her would deplete the fund by taking a large part of the principal on which he will be entitled to income in the event that he shall live to receive it. If the *Page 97 
fund be held in court, the rights of both parties will be protected. The wife can receive the entire income from the fund during her husband's life, being all that she would have been entitled to had she allowed the lands to remain lands, except that she will not have the actual possession of the fund while her husband lives.
The proceeds of sale should be invested and the income arising therefrom paid to the wife during the joint lives of the husband and wife and to the husband during his life if he survives her, and after his death the principal will be paid to the wife's heirs, or, on the death of the husband during the wife's life, she will be entitled to have the principal paid to her.