7 N.J. Super. 301 (1950)
70 A.2d 896
THE TRENTON BANKING COMPANY, TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF ANNA B. STOKES, DECEASED, PLAINTIFF,
v.
BETTY ANN STOKES HAWLEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 23, 1950.
*303 Messrs. Katzenbach, Gildea & Rudner (Mr. George Gildea, of counsel), for the plaintiff.
Mr. Ellis L. Pierson, for Mercer Hospital.
Mr. J. Albert Homan, guardian ad litem pro se.
Mr. Charles Sabin, for Robert B. Hawley, guardian ad litem.
Mr. George Warren, for Betty Ann Stokes Hawley.
JAYNE, J.S.C.
The plaintiff in its capacity as testamentary trustee has presented its complaint in this action to elicit the advice and directions of the court in an exigency brought about by an endeavor to accelerate the trust established by the following clause of the will:
*304 "NINTH: I hereby authorize and direct my executors hereinafter named to pay and deliver to The Trenton Banking Company of Trenton, New Jersey, the sum of seventy-five thousand (75,000) dollars, either wholly in money or wholly in securities or partly in money and partly in securities, in the absolute and uncontrolled discretion of my said executors; and I hereby constitute and appoint the said The Trenton Banking Company of Trenton, New Jersey, as my trustee, to receive the said principal sum of seventy-five thousand (75,000) dollars and to hold and administer the same as follows:
"(1) During the life of my daughter by adoption. Betty Anne Stokes Hawley, who was formerly Anna B. Meyers, the decree for whose adoption by me was made and entered in the Orphans' Court of the County of Mercer, in the State of New Jersey, on March 27th, A.D. 1926, the said The Trenton Banking Company of Trenton, New Jersey, shall hold, manage, invest and reinvest the aforesaid sum of seventy-five thousand (75,000) dollars as a trust fund, collect and receive the income and profits thereof and, after paying all expenses of administering the said trust, pay the entire net income thereof to the aforesaid Betty Anne Stokes Hawley, in as nearly equal monthly installments as possible, so long as she shall live.
"(2) At and upon the death of my aforesaid adopted daughter, Betty Anne Stokes Hawley, the aforesaid trust shall cease and determine and I hereby give and bequeath, and my aforesaid trustee shall pay, the principal of the aforesaid fund of seventy-five thousand (75,000) dollars, together with all accumulations thereon, outright and discharged from this trust, in equal parts or shares, to her children and to the issue then surviving of any deceased child or children of my said adopted daughter, Betty Anne Stokes Hawley, such issue of any deceased child to take the share which their parent would take if living, to be divided among such issue equally per stirpes and not per capita.
"(3) If my aforesaid adopted daughter, Betty Anne Stokes Hawley, shall survive me but die without leaving issue surviving her, then and in that event I give and bequeath, and my said trustees shall pay, the principal of the aforesaid trust fund of seventy-five thousand (75,000) dollars, together with all accumulations thereon, outright and discharged from this trust, in equal shares to the aforesaid William McKinley Memorial Hospital, St. Francis Hospital, Mercer Hospital, Orthopaedic Hospital, First Church of Christ Scientists, Indigent Widows' and Single Women's Home Society. New Jersey Children's Home Society and St. James' Day Nursery, all of the aforesaid City of Trenton, as soon as practicable after her decease.
"(4) If my aforesaid adopted daughter, Betty Anne Stokes Hawley, shall predecease me leaving issue surviving me, my aforesaid executors, instead of establishing the aforesaid trust fund and paying the aforesaid sum of seventy-five thousand (75,000) dollars to the said The Trenton Banking Company of Trenton, New Jersey, as trustee, shall pay the said sum, as soon as practicable after my decease, either wholly in money or wholly in securities or partly in money and partly *305 in securities in the absolute and uncontrolled discretion of my said executors, directly and free and clear of any trust, to such children of my aforesaid adopted daughter, Betty Anne Stokes Hawley, as shall survive me, share and share alike, the child or children of any deceased child of hers to take the parent's share, per stirpes and not per capita.
"(5) If my aforesaid adopted daughter, Betty Anne Stokes Hawley, shall predecease me without leaving issue surviving me, my aforesaid executors, instead of establishing the aforesaid trust fund and paying the aforesaid sum of seventy-five thousand (75,000) dollars to the said The Trenton Banking Company of Trenton, New Jersey, as trustee, shall pay the said sum, as soon as practicable after my decease, either wholly in money or wholly in securities or partly in money and partly in securities in the absolute and uncontrolled discretion of my said executors, directly and free and clear of any trust, to the aforesaid William McKinley Memorial Hospital, St. Francis Hospital, Mercer Hospital, Orthopaedic Hospital, First Church of Christ Scientists, Indigent Widows' and Single Women's Home Society, New Jersey Children's Home Society and St. James' Day Nursery, all of the aforesaid City of Trenton, in equal shares."
It is evident that the testatrix died on October 21, 1946. She was survived by her adopted daughter, Betty Anne Stokes Hawley, the life tenant, and the latter's two children. Thereafter the life tenant gave birth to a third child. The three children, Robert Stokes Hawley, Sandra Jean Hawley, and David Bruce Hawley, are living.
On April 20, 1949, the life tenant executed an instrument in writing in which she agreed to surrender and release to her husband, Robert Bruce Hawley, as "next friend and guardian" of the three children and to the three children, her life estate in the trust, and agreed to execute upon request of the trustee any and all proper and necessary instruments to effectuate the desired release.
The instrument, however, contained the significant qualification that "If, for any reason, the aforementioned trust is not hereby accelerated and terminated so that the corpus thereof shall vest in the grantees herein, then this agreement shall be void and of no effect."
On May 21, 1949, the life tenant executed and duly acknowledged an unconditional release of all her right, title, and interest in her life estate in the trust, and an exoneration of *306 the trustee from any and all further responsibility or liability in the administration of the trust.
It may be seriously doubted that the agreement of April 20, 1949, embracing such a qualification would constitute such an unconditional and absolute relinquishment of the life estate as to extinguish it. Cf. Schmieder v. Meyer, 97 N.J. Eq. 335, 339, 127 A. 162 (1924); Bennett v. Fidelity Union Trust Co., 122 N.J. Eq. 455, 194 A. 449 (1937).
The perplexity of the trustee relates more profoundly to the legal effectiveness of the release.
Not very long ago I consulted the authorities explicative of the doctrine of acceleration. Simpkins v. Simpkins, 131 N.J. Eq. 227, 24 A.2d 821; Young v. Eagon, 131 N.J. Eq. 574, 26 A.2d 180.
Several decisions on the subject have since entered our reports but, as I interpret them, the pertinent basic principles have not been supplanted or recast. Baer v. Fidelity Union Trust Co., 132 N.J. Eq. 333, 28 A.2d 275 (1942); affirmed, 133 N.J. Eq. 264, 31 A.2d 823; Provident Trust Co. of Philadelphia v. Osborne, 133 N.J. Eq. 518, 522 et seq., 33 A.2d 103 (1943); Lampros v. Tenore, 142 N.J. Eq. 293, 294, 60 A.2d 80 (1948); Lawrence v. Westfield Trust Co., 1 N.J. Super. 423, 61 A.2d 899 (1948).
In Simpkins v. Simpkins, supra, I stated with the accompanying citation of a column of supporting adjudications, that where there is a testamentary gift of a life estate and a gift of the remainder after the termination of the life estate, the gift in remainder will be deemed vested immediately in the absence of some controlling equity or some evidence in the will from which a different intent is implied.
An examination of the will in the present case manifestly demonstrates that the bequest of the interests in remainder vested immediately in the grandchildren of the testatrix upon her death. It is apparent also that the bequest is to be recognized as a gift to a class as defined and denominated by Jarman. Clark v. Morehous, 74 N.J. Eq. 658, 70 A. 307 (1908); Burlington County Trust Co. v. Di Caslelcicala, 2 N.J. 214, 221, 66 A. 2d 164 (1949).
*307 The circumstance that the testamentary donation to the members of the class is in equal parts or shares does not remove the bequest from the category of vested remainders. Clark v. Morehous, supra. Such a gift will embrace not only the members of the class who are living at the death of the testator or testatrix, but all who may subsequently come into existence before the period of distribution. 2 Jarman, Wills (5th Am. Ed.) 704; Fidelity Union Trust Co. v. Graves, 139 N.J. Eq. 571, 584 et seq., 52 A.2d 750 (1947). See, too, Fidelity Philadelphia Trust Co. v. Jameson, 137 N.J. Eq. 385, 392, 45 A.2d 134 (1946), and Moore v. Moore, 137 N.J. Eq. 314, 327, 44 A.2d 639 (1945).
I observe with interest that a deposition of Dr. William S. Foster, a duly licensed and practicing physician and surgeon of Santa Barbara, California, is offered for admission in evidence. He deposes that on June 28, 1947, "a postpartum tubal ligation was performed abdominally, after the manner of Pomeroy (upon the life tenant) that is that the operation was performed abdominally and the tubes were knuckled, ligated and the distal loops excised. This operation rendered Mrs. Hawley sterile."
I am aware that Sir William Blackstone declared that there is no time in the life of a woman, no matter what her age or state of health, when she is presumed in the law to be unable to conceive and bear children. Chancellor Walker adhered to that view in Riley v. Riley, 92 N.J. Eq. 465, 113 A. 777 (1921), and his observations were approved by the Court of Errors and Appeals in Oleson v. Somogyi, 93 N.J. Eq. 506, 115 A. 526 (1921). The apparent departures from that ancient principle of law in In re Staheli, 78 N.J. Eq. 74, 78 A. 206 (1910), and In re Riva, 83 N.J. Eq. 200, 90 A. 669 (1914), were overruled.
In Schumacher v. Howard Savings Institution, 126 N.J. Eq. 325, 8 A.2d 908 (1939), and again in Byers v. Fidelity Union Trust Co., 132 N.J. Eq. 416, 420, 28 A.2d 655 (1942), proof that the female was incapable of having issue was excluded.
*308 The presumption so solidly established in our law that females, regardless of age, bodily deformities, enfeeblement or other natural infirmities, may bear children at any time during their lives, must be accorded due respect. Cf. Marx v. Rice, 3 N.J. Super. 581, 589, 67 A.2d 918 (1949). But it is now well known that positive and permanent sterility can be accomplished surgically by the complete removal of all of a female's procreative organs and generative parts.
I venture to express the opinion that a presumption restricting the introduction of evidence ought not because of its antiquity continue to defy the realities of the present time and serve to conceal the demonstrable truth. Such must be the fate of all of our legal theories that do not square with the common sense of our present intellectual climate. After all, the law must continue to be the dictate of reason.
I would be inclined to admit the deposition in evidence in the present case. I do not understand, however, that permanent sterility necessarily results from a ligation of the tubes, which is the type of the surgical operation performed in this instance.
And so I shall consider that the class of beneficiaries of the remainder of the testamentary trust remains open.
The following quotation extracted from the opinion of Vice-Chancellor Leaming in Anthony v. Camden Safe Deposit & Trust Co., 106 N.J. Eq. 41, 149 A. 822 (1930), is familiar: "Although the language of the will refers to the death of the particular tenant as the time for distribution to the remaindermen, it is an established rule of construction of testamentary provisions of that nature that a testator will be presumed to have intended to give the property in remainder from and after the termination of the preceding estate in the absence of some controlling equity or an express or clearly implied provision in the will to the contrary; and accordingly the provisions for distribution at the death of the life tenant, standing alone, will be understood to relate to the termination of the precedent estate and accelerate distribution to remaindermen whose estates in remainder are vested. As specifically pointed out in Sherman v. Flack, 283 *309 Ill. 457, and in Holdren, Adm. v. Holdren, 78 Ohio St. 276, this established doctrine proceeds upon the supposition that, although the ultimate devise is in terms not to take effect in possession until the death of the life tenant, yet in point of fact it is to be read as a limitation of the remainder to take effect in every event which removed the prior estate out of the way."
It is observed that a remainder may not be accelerated if there is an express or clearly implied provision in the will to the contrary.
Here under the terms of the will the class gift is to the children of the life tenant. Although there were two "children" of the life tenant living at the death of the testatrix, they were not designated by name in her will. The children of the life tenant are to take "in equal parts and shares." There are now three children, and the possibility of additions to the class is in law presumed. The rule of construction in these cases that the period of distribution arrives upon the release and surrender of the life estate must yield where the members of the class of the primary remaindermen are not then definitely ascertainable, and where consequently the class is then open, and where the shares of the members of the class presently apparent are subject to possible diminution by the admission of additional primary remaindermen. The situation in this case becomes clear, I think, if we hypothesize that had the trust been accelerated immediately following the death of the testatrix and the corpus distributed, the third child of the life tenant would have been disinherited. Cf. Ward v. Tomkins, 30 N.J. Eq. 3.
Moreover in exploring the will inquisitively to detect some manifestation of the intention of the testatrix in the relevant particular, attention converges upon paragraph (3) of the ninth clause, in which the testatrix directs that "If my aforesaid adopted daughter, Betty Anne Stokes Hawley, shall survive me but die without leaving issue surviving her, then and in that event" the corpus of the trust is bequeathed to the designated institutions.
*310 In the circumstances I shall be guided by the decision in Lawrence v. Westfield Trust Company, 1 N.J. Super. 423, 433, 61 A.2d 899 (1948).
The endeavor of the life tenant to accelerate the trust does not offend the forfeiture clause in the will. Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444, 450, 20 A.2d 21 (1941); Marx v. Rice, 1 N.J. 574, 587, 65 A.2d 48 (1949).
Judgment in accordance with these conclusions.