89 N.J. Super. 224 (1965)
214 A.2d 521
IN THE MATTER OF THE ESTATE OF FRANK E. RANSOM, SR., DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1965.
Decided November 8, 1965.
*226 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. John H. Grossman argued the cause for appellants Frank E. Ransom, Jr., Margery Emily Cooke Ransom and William Ransom (Mr. Sam Weiss, of counsel).
Mr. Charles M. Judge argued the cause for respondent Trust Company of Morris County (Mr. Frank J. Valgenti, Jr., attorney).
*227 The opinion of the court was delivered by KILKENNY, J.A.D.
The Morris County Court, Probate Division, refused to approve an agreement executed May 31, 1960 by Frank Elmer Ransom, Jr., Margery Emily Ransom, his wife, and William Frank Ransom, their son, whereby a testamentary trust for their benefit, created by Frank's father, Frank E. Ransom, Sr., who died on December 23, 1944, would be accelerated and terminated and distribution made by the trustee, Trust Company of Morris County. The aforesaid beneficiaries appeal, contending that they are entitled to accelerate the trust.
So far as pertinent here, decedent's will, executed on November 25, 1929, created a trust which specified that, upon the death of his wife Elizabeth (which event occurred on October 23, 1958), one-third of the income shall be paid to his son, Frank Elmer Ransom, Jr., "during the term of his natural life," and one-sixth of the income shall be paid to Margery Emily Ransom, wife of Frank, Jr., "during the term of her natural life" and while she remains the widow or wife of Frank, Jr. Upon the death of Frank, Jr. or his wife Margery, their share of the income "shall be paid to their children now living or born hereafter, share and share alike." (Emphasis ours) The will then provided:
"8th. I hereby give to and empower my grandchildren the power to dispose of the principal of the trust estate above set forth in the proportion that each of my grandchildren share in the income."
There were analogous provisions as to the other half of the trust estate in favor of the wife and children of decedent's other son, Samuel, who had been missing for some time. We are not concerned with that half of the trust estate on this appeal. Samuel's wife, Grace, divorced him in 1938, thereby terminating any right by her in the income. Samuel was judicially declared presumptively dead by judgment of our Chancery Division in 1959. Samuel and Grace had two children who were alive when decedent died, and there is no possibility of other children being "born hereafter" to Samuel *228 and Grace. The County Court allowed the two living children of Samuel and Grace to accelerate this one-half of the trust and directed the trustee to make distribution thereof to them. There is no appeal by anyone from this portion of the judgment.
In denying acceleration of the half of trust estate, in which Frank, Jr., his wife Margery, and "their children now living or born hereafter" were the designated beneficiaries, the trial court adjudged that:
"2. The power of disposal given by Article Eighth of the Last Will and Testament of Frank E. Ransom, Sr., is invalid as in violation of the rule of perpetuities with respect to the gift to the children of Frank and Margery Ransom. There is intestacy of the portion of the corpus allocable to this class gift.
3. There was no unconditional release by Frank and Margery Ransom of their life interests in income.
4. The class of grandchildren possible to be born to Frank and Margery Ransom was still open and acceleration will not be permitted when it will cut off subsequently born members of the class."
Reliance was placed by the trial court, with reluctance, upon the rule expressed by Blackstone, 2 Blackstone, Commentaries 125, that there is no time in the life of a woman, no matter what her age or state of health, when she is presumed in the law to be unable to conceive and bear children.
Margery Ransom was 71 years old when this matter was heard in the County Court on May 16, 1963. She became 72 years old the following month, on June 21, 1963. Her husband, Frank, Jr., was then 70 years old. Their one and only child, William Frank Ransom, was 39 years old at that time. When she had that child, according to her testimony, her doctor told her that probably she would never have any more children. His prognosis proved valid for the 39 years thereafter. She was examined and treated in 1946 and thereafter by Dr. C. William Moeckel and never menstruated after 1946 or 1947.
Dr. Moeckel testified to having treated Margery Ransom from February 7, 1946 for menopause, and that there had *229 been a cessation of menstruation at that time. He removed her gallbladder in 1959 and last saw her on September 27, 1962 for a pelvic examination. Her "uterus was very small, partial prolapse and cystocele." He described her uterus as representing "the typical menopause uterus, small, atrophied," about a third of the normal size of an uterus, one that "would not menstruate." It was his medical opinion that Mrs. Ransom was not capable of bearing any children. The doctor testified that the oldest pregnancy of confirmed age in the reported literature, including the foreign, was of a woman of 55. In his own experience, the oldest one of whom he had heard was 46 or 47. He explained that "ovulation does not occur after two years of cessation of menstruation. Ovulation is a requirement for menstruation or for pregnancy."
The rule against perpetuities is not applicable to the facts herein. That rule relates to contingent remainders and executory devises, and not to vested remainders. Camden Safe Deposit, etc., Co. v. Scott, 121 N.J. Eq. 366, 110 A.L.R. 1442 (E. & A. 1937). The remainders herein are vested remainders in favor of decedent's grandchildren. The general gift of income for an indeterminate period in favor of the grandchildren, as provided in paragraph 7th of the will, coupled with the absolute power of disposal of the corpus by deed during the lifetime of the donee of the power, as construably provided in paragraph 8th, resulted in each class of grandchildren being vested with an absolute one-half share of the trust estate, to be enjoyed upon the death of their respective parents, who were beneficiaries of shares in the income for their respective lives only. Gray, The Rule Against Perpetuities (4th ed. 1942), § 477, at p. 471; 4 Restatement, Property, § 391 and comment (b), at pp. 2301-2303; 5 Powell, Real Property § 787, at p. 667 (1952).
The grandchildren were not bequeathed a share in the income for life only. Compare the limitation "during the term of his natural life," to which the income payable to each parent was made subject. The grandchildren were given a share in the income upon the death of either or both parents, *230 which was unlimited in time, and were also given an absolute power of disposal over a share in the corpus, proportionate to their share in the income, which power could be exercised during their lifetime and was not restricted to a testamentary disposition. Such unlimited power of absolute disposal is construed to pass absolute ownership. Gaston v. Ford, 99 N.J. Eq. 592 (Ch. 1926); Trafton v. Bainbridge, 125 N.J. Eq. 474, 478 (E. & A. 1939); Burlington County Nat. Bank v. Braddock, 24 N.J. Super. 462 (Ch. Div. 1953).
Under this rule, the grandchildren took a vested remainder at the death of the testator, with the right of enjoyment postponed during the lifetime of the income beneficiaries for life, subject to the possibility of additional grandchildren who might diminish the quantum of each one's vested estate. As the court expressed it in Camden Safe Deposit, &c., Co. v. Scott, supra:
"The vested estates of the grandchildren living at the time of the death of the testator `are subject to being divested or modified as to quantity, only.' Trippe v. National Newark, &c., Banking Co., supra ([98 N.J. Eq.], at p. 466)." (121 N.J. Eq., at p. 373)
The Trippe case is at 98 N.J. Eq. 462, 466 (Ch. 1925), affirmed 100 N.J. Eq. 356 (E. & A. 1926).
The testamentary disposition in favor of testator's "grandchildren" was a gift to a class and embraced not only those living at the time of testator's death, but all who might subsequently come into existence before distribution. Clark v. Morehous, 74 N.J. Eq. 658 (Ch. 1908); Trenton Banking Co. v. Hawley, 7 N.J. Super. 301, 307 (Ch. Div. 1950); Jarman, Wills (5th Am. ed.) 704. Nonetheless, the remainder was vested. So long as the class remained open and possibility of a child's being born in the future to the parents existed, the preceding life estates of the parents could not be accelerated with a resultant termination of the trust. Trenton Banking Co. v. Hawley, supra. But when the possibility of any further children being born to Frank, Jr. and Margery no longer existed, there was no reason why the life income beneficiaries *231 could not unequivocally and unconditionally surrender their interests in the trust estate and join with the sole remainderman in accelerating and terminating the trust.
The trial judge undoubtedly would have sanctioned the distribution of this one-half of the trust estate, as he did with reference to the other one-half bequeathed to the family of decedent's other son, had he not felt compelled to deny the application because of what he deemed the conclusive legal presumption that Margery Ransom, despite her advanced age and physical condition, could possibly bear children. Riley v. Riley, 92 N.J. Eq. 465, 472 (Ch. 1921); Oleson v. Somogyi, 93 N.J. Eq. 506, 507 (E. & A. 1921); Schumacher v. Howard Savings Institution, 126 N.J. Eq. 325, 326-327 (Ch. 1939); Byers v. Fidelity Union Trust Co., 132 N.J. Eq. 416, 420 (Ch. 1942). However, the more modern and better view is to regard this presumption as rebuttable, rather than conclusive, and to allow the admission of evidence to overcome the presumption. Trenton Banking Co. v. Hawley, supra; Sevel v. Swarzman, 33 N.J. Super. 198, 203 (Ch. Div. 1954); In re Lattouf, 87 N.J. Super. 137, 144 (App. Div. 1965).
A recent well considered expression of the modern judicial view on this subject is contained in the opinion of the Supreme Court of New Hampshire in In re Bassett's Estate, 104 N.H. 504, 190 A.2d 415, 98 A.L.R.2d 1281 (1963).
"This so-called irrebuttable presumption that a man or woman is capable of having children as long as life lasts is an anachronism which has been severely criticized. 3 Powell, Real Property, s. 347 (1952); Bogert, Trusts and Trustees (2d ed. 1962) s. 1007, pp. 543, 544; 1 Nossaman, Trust Administration and Taxation, ss. 6.11 and 21.03 (2d ed. 1961); 14 U. Pitt. L. Rev. 452 (1953). `The reasonable certainty which suffices for other purposes should also suffice for the Rule against Perpetuities. Fanciful doubts, contrary to the common experience of mankind, should not be permitted to disrupt family estate plans and frustrate reasonable expectations.' 6 American Law of Property, s. 24.22, p. 72 (1952).
It is significant that in the practical field of taxation the conclusive presumption that a person is always capable of hearing children has been discarded. United States v. Provident Trust Company, 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793; Commissioner of Corporations and *232 Taxation v. Bullard, 313 Mass. 72, 46 N.E.2d 557, 146 A.L.R. 772. See 9 Wigmore, Evidence (3d ed.) s. 2528.

* * * * * * * *
This state rejects the `notion' there is a conclusive presumption that a man or woman is always capable of bearing children regardless of age, physical condition and medical opinion to the contrary.

* * * * * * * *
This matter is well stated in new text added in the 1963 supplement to 3 Scott, Trusts, s. 340.1 p. 2500 as follows: `Even though it cannot be said that it is absolutely impossible that children should be born, it would seem that the court should permit the termination of the trust if the possibility of the birth of children is negligible.' We adopt this statement. This is consistent with the Restatement of Property s. 274(1) (a), (b), which reads as follows: `(1) When a limitation purporting to create a remainder or an executory interest is in favor of a person whose birth is, or becomes, impossible because of either the death, physical condition or advanced age of a required parent, such limitation has no effect thereafter (a) to prevent or to delay the distribution of an estate or fund; or (b) to prevent or to delay the termination of a trust.' See also, Restatement (Second), Trusts, s. 340, comment e." (190 A.2d, at p. 417)
The chance of becoming pregnant after the age of 50 is negligible, and more so if the woman has passed through the menopause. In a study by Dr. Lawrence R. Wharton, a Baltimore obstetrician, of medical literature from 1850 to date, including an analysis of vital and hospital statistics, he found only 26 authentic cases of women who delivered normal living babies after age 50.[1] While, therefore, no definite age can be conclusively fixed at which pregnancy ceases to be possible, there are other factors besides or in addition to age which can render this possibility extinct. For example, if a woman's procreative organs have been removed, the possibility of her bearing children has been extinguished. We so held in In re Lattouf, supra. In such a case, it would be unrealistic and inappropriate for a court to act upon any presumption that she may still bear children. So, too, when the female uterus has become atrophied, or where many years have elapsed since the last menstruation as in the instant case. In such circumstances, the presumption of further fertility has been overcome *233 so clearly and convincingly that a court ought not to cling to it as conclusive and fly in the face of common sense.
The trial court concluded that "the proofs in this case do establish that Mrs. Margery Ransom at age 72 is in fact incapable of bearing a child." We agree. When, as here, the proofs are so clear and convincing as to such a fact that one could not reasonably entertain any doubt with respect thereto, the presumption in favor of the possibility of the woman's bearing another child has been effectively overcome and the fact will be determined on the basis of the proofs. Therefore, the class of potential remaindermen, who might have come in as children "born hereafter" to Frank, Jr. and Margery Ransom, is closed. The life income beneficiaries and sole remainderman had the power to accelerate and terminate the trust.
In denying the application, the trial court assigned as a second reason that "there was no unconditional release by Frank and Margery Ransom of their life interests in income."
The parties to the agreement of May 31, 1960 agreed therein to consent to an order of the court distributing to each of the life beneficiaries a commuted sum equivalent to the value of his or her life interest in the income. However, the court may not order such a distribution until the life beneficiaries execute an unconditional, unequivocal, absolute and immediately effective surrender of their life interests in and release of the trust estate. Bennett v. Fidelity Union Trust Co., 122 N.J. Eq. 455 (Ch. 1937); Trenton Banking Co. v. Hawley, supra, 7 N.J. Super., at p. 306.
There is no doubt that the parties are desirous of terminating the trust and will execute the required surrender and release in a form meeting the foregoing requirements. If they do so, the County Court is directed to order a termination of the trust and distribution by the trustee of the remaining one-half of the trust estate held by it to the person or persons designated by the beneficiaries, as fixed by their agreement.
The judgment denying acceleration and termination of the trust as to the one-half interest for the benefit of the family *234 of Frank Elmer Ransom, Jr. is reversed, on condition that the parties execute a proper surrender and release, and the matter is remanded to the Morris County Court for further proceedings consistent with this opinion.
NOTES
[1] New York Sunday News, October 17, 1965, page 128.